IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CV-656-F

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| | ) | |
| $16,000.00 IN U.S. CURRENCY, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court upon the Government's Motion for Default Judgment. [DE-12]. For the reasons stated below, the motion is DENIED.

I.  **PROCEDURAL AND FACTUAL HISTORY**

This civil action in rem was brought pursuant to 21 U.S.C. ¶ 881(a)(6). The Government initiated this action by filing a Complaint for Forfeiture *In Rem* [DE-1] in this court on October 17, 2014, alleging that the defendant, $16,000.00 in United States currency, was "used or intended to be used in exchange for controlled substances or represents proceeds of trafficking in controlled substances or was used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 et seq." Compl. Forfeiture *In Rem* [DE-1] ¶ 1.

In accordance with Supplemental Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the Clerk of Court issued a Warrant of Arrest and Notice *In Rem* [DE-4] on October 21, 2014. Beginning on November 26, 2014, a Notice of Civil Forfeiture was posted on an official government internet site, www.forfeiture.gov, for at least 30 consecutive days, and a proof of publication was filed with this court on April 8, 2015. *See* Advertisement Certification Report [DE-6-1] at 1-2.

On November 25, 2014, the Government completed service on the defendant currency while it was in the possession of the United States Marshals Service. *See* Process Receipt and Return [DE-5]. On April 8, 2015, personal service was made on potential claimant Isaiah Jerome Edwin. *See* Process Receipt and Return [DE-8]. Likewise, personal service was made on potential claimant Robert Eric Ramirez, Jr. *See* Process Receipt and Return [DE-9] at 2. Service was made on potential claimant Maurice A. Newkirk via personal delivery to Yolanda Baxter, mother of two of Newkirk's children, at Newkirk's residence. *See id.* at 1. However, service of process on potential claimant Robert Eric Ramirez was apparently made by serving the Complaint and Warrant of Arrest *In Rem* on his attorney. *See* Aff. Failure Plead Otherwise Defend [DE-10] ¶ 3; *see also* Certified Mail Receipt [DE-6-2]. No answer or claim has been filed by any person in this action.

On June 16, 2015, the Government filed an Affidavit of Failure to Plead or Otherwise Defend [DE-10], a Motion for Entry of Default [DE-11], and a Motion for Default Judgment [DE-12]. The Clerk of Court entered Default [DE-13] against the defendant currency on August 18, 2015, and submitted the Government's Motion for Default Judgment to the undersigned.

The facts of the complaint and the accompanying declaration show the following: This forfeiture action arises out of a March 12, 2014 search of the vehicle of Robert Eric Ramirez. On that date, officers stopped Ramirez's vehicle for following a truck too closely. During the stop, the officers detected the odor of marijuana and called for a K-9 unit to conduct a sniff of the vehicle. The drug alerted on a cooler bag previously held by one of the vehicle's occupants.

The police asked Ramirez, the driver of the vehicle, if there were any weapons, narcotics, or large amounts of cash in the vehicle. Ramirez said that there were no drugs or weapons, but

2

that there was $16,000.00 in cash. The officers began a search of the vehicle and found $16,000.00 in United States currency in the cooler bag.

Ramirez stated that the money was his and resulted from proceeds from car sales as part of his business operations. He named the cars he had sold and stated that he had records for the sales at his residence. He also stated that his wife could confirm the sales. Police called Ramirez's wife and she did confirm Ramirez's story. The police noted that Ramirez had called his wife sometime before the police spoke to her, but do not note the duration or content of the call nor whether they asked Ramirez about the nature of the call.

No drugs or weapons were found in the car. Ramirez received a warning for following too closely and was released. Ramirez had two convictions for weapons and possession of cocaine that were twenty years old. The potential claimants for the seized currency are Robert Eric Ramirez, Isaiah Jerome Edwin, Maurice A. Newkirk, and Robert Eric Ramirez, Jr.

## II. DISCUSSION

A motion for default judgment typically raises three issues for the deciding court. (1) whether entry of default is appropriate under Rule 55 of the Federal Rules of Civil Procedure; (2) whether the plaintiff has adequately stated his claims such that the court may enter default judgment thereon; and (3) to what relief is the plaintiff entitled. In the instant case, the court concludes that the first and second issues preclude the court from allowing the Government's Motion for Default Judgment.

### a. Default was inappropriately entered as to Robert Eric Ramirez.

The Due Process clause of the Fifth Amendment prohibits the deprivation of property without "due process of law." U.S. Const., Amend. V. Individuals whose property interests are at stake are entitled to "notice and an opportunity to be heard." *United States v. James Daniel*

3

*Good Real Prop.*, 510 U.S. 43, 48 (1993). The Government also must send direct notice to "any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim." Fed. R. Civ. P. Supp. R. G(4)(b)(i).

"An attorney who generally handles the legal affairs for an individual is *not* an agent of that person for the service of process *unless* he makes an appearance in the law suit for him." *Beck v. Beck*, 306 S.E.2d 580, 583 (N.C. Ct. App. 1983) (first emphasis added); *see also* Fed. R. Civ. P. Supp. R. G(4)(b)(iii)(B). No appearance has been made by Mr. Ramirez's counsel, Randy P. Davenport. Therefore, without additional evidence, the court cannot conclude that Mr. Davenport was an agent who could receive service of process on Mr. Ramirez's behalf. Given this record, the court finds that a copy of the Complaint in this action was not properly served upon a known potential claimant of the defendant currency. The court, accordingly, cannot find that the Government complied with Supplemental Rule G(4)(b)(i) or the Due Process clause of the Fifth Amendment. Service was defective and the entry of default as to Mr. Ramirez must be vacated. Accordingly, the Clerk of Court is DIRECTED to vacate the entry of default as to Mr. Robert Eric Ramirez.

Because service of Mr. Ramirez was defective, default judgment cannot be entered. Accordingly, the Government's Motion for Default Judgment [DE-12] is DENIED. The Government is ORDERED to send, within 21 days of the filing date of this order, Notice of these proceedings to Robert Eric Ramirez, in accordance with Supplemental Rule g(4)(b)(ii)-(ii). The Government is ORDERED to, within 35 days, file proof of such service, or an affidavit showing why such service is not necessary or unreasonable.

Moreover, the court recognizes that Supplemental Rule G(5)(ii)(B) provides that a person must file a claim "no later than 30 days after final publication of newspaper notice or legal

4

notice" or "no later than 60 days after the first day of publication on an official internet government forfeiture site" if "notice was published but direct notice was not sent to the claimant or the claimant's attorney." Given the circumstances of this case, the court finds that good cause exists to allow Robert Eric Ramirez 45 days to file a claim from the date the required notice is sent as provided in this order.

### b. The Complaint fails to state a claim as to the defendant currency.

It is well settled that upon default, the well-pleaded facts alleged in the Complaint are deemed admitted. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). However, a defaulting defendant is not held to admit conclusions of law, and the well-pleaded allegations of the Complaint must still support the plaintiff's claims and the relief sought. *See id.* In context of a civil forfeiture action instituted pursuant to 21 U.S.C. § 881(a)(6), a complaint must meet the particularity in pleading requirements set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions. Specifically, Rule G(2)(f) mandates that a civil forfeiture complaint "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f).

In this case, at trial, the Government would have to prove, by a preponderance of evidence, that the property is subject to forfeiture. *See* 18 U.S.C. § 983(c). In other words, the Government would have to prove that it was more likely than not that the defendant property was used, or intended to be used, in exchange for controlled substances, or represents proceeds of trafficking in controlled substances or was used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq*. Morever, "if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a

5

criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3).

The Complaint in this case is devoid of facts showing that the currency "was used or intended to be used in exchange for controlled substances or represents proceeds of trafficking in controlled substances or was used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act." Compl. Forfeiture *In Rem* [DE-1] ¶ 1. Indeed, the Complaint shows *no connection* between the property and an offense, much less a substantial one. *See* 18 U.S.C. § 983(c)(3). What the facts show is that the police pulled over a vehicle for a traffic violation, thought they smelled marijuana, and brought in a drug-sniffing drug who hit on a bag of money. No drugs or weapons were found. The money was in a bag held by a passenger, not in a hidden compartment. The driver had a reasonable explanation that was corroborated by the driver's wife. The police did no further investigation of the driver's explanation, even though he offered further proof, and none of the men were charged in connection with a drug crime. Forfeiture cases have been dismissed on stronger evidence than the present case. *See, e.g., United States v. $10,700 in U.S. Currency*, 258 F.3d 215, 218-20 (3d Cir. 2001) (reversing decree of forfeiture); *see also United States v. Mondragon*, 313 F.3d 862, 867 (4th Cir. 2002) (holding that half a million dollars by itself did not suggest a connection to drug trafficking, but finding that additional factors of professionally constructed secret compartment and drug-sniffing dog hit in *other* parts of the car outside of the cash provided sufficient additional evidence of drug-trafficking activity).

A case from the Third Circuit illuminates the weaknesses of the government's case in the present action. In the Third Circuit case, police officers stopped a vehicle for speeding. *See id.* at

6

219. The police noted that the vehicle occupants were acting suspiciously and obtained consent to search the vehicle. *See id.* Inside of a bag, the police found $21,000.00 in United States currency, which one of the vehicle passengers said was to be used to buy a car. *See id.* A second bag containing $8,000.00 was also found. *Id.* An additional $3,380.00 was found on the vehicle occupants' persons. *See id.* at 219-20.

A canine unit was used to test the currency and the vehicle. *Id.* at 220. The dog "'gave positive indications on the currency' but offered 'negative indications' with respect to the interior and exterior of the vehicle." *Id.* The vehicle driver was cited for speeding, and the occupants of the vehicle were released without being charged with any illegal activity other than the speeding citation. *Id.* The police later tested the money with an ION Scan Analysis, which showed that the currency had "high levels of cocaine residue, an indication that the monies were involved in drug trafficking." *Id.* A background check of the vehicle occupants showed that each had previous drug trafficking and possession charges, the most recent having happened five years previous to the traffic stop. *See id.*

The Third Circuit, in reversing the decree of forfeiture, found that the government had provided no evidence of the reliability of the dog sniff test and that the reliability of dog sniff testing had been generally called into question by other Circuit courts. *See id.* at 229-230. Additionally, the government had not provided "any evidence concerning this particular dog's past training and its degree of accuracy in detecting narcotics on currency." *Id.* at 230. The Third Circuit similarly found concerning the ION Scan Analysis, specifically that there was no evidence regarding "how the test measures the levels of narcotics on the currency, what the test results showed with respect to the levels and types of narcotics detected, and why those results

7

were scientifically significant when compared to the results on other parts of the vehicle." *See id.* at 231.

Here, the police have not conducted any tests of the bag beyond the dog drug sniff test. No drugs were found in the car, nor did the dog hit anywhere else in the car. The driver here was not only forthright about ownership of the money, but also voluntarily disclosed that there was cash in the car. Additionally, the driver here had independent corroboration of his story from his wife. He also told the police that he had records to verify the sales. However, the police did no further investigation of those records. The burden is on the government to prove its case. As the Third Circuit said, in a case with stronger evidence than the present one, "[w]hile these factors admittedly might cause one to suspect that claimants may have been involved, or about to engage, in drug activities with this money, are they enough, when considered with the other suspicious circumstances, to give rise to the reasonable belief that such was the case?" *Id.* at 232. They are not.

Civil forfeiture is a powerful tool for seizing assets used to further criminal enterprises. However, like any tool, it can be abused. Because of that, the government has certain checks in place to proscribe its seizure powers. The Seventh Circuit has adeptly summarized these limitations as it relates to alleged drug trafficking funds:

> [*N*]*othing* ties this money to any narcotics activities that the government knew about or charged, or to any crime that was occurring when the government attempted to seize the money. We reiterate that the government may *not* seize money, even half a million dollars, based on its bare assumption that most people do not have huge sums of money lying about, and if they do, they must be involved in narcotics trafficking or some other sinister activity. Moreover, the government may not require explanations for the existence of large quantities of money absent its ability to establish a valid narcotics-nexus.

8

*United States v. $506,231 in U.S. Currency*, 125 F.3d 442, 453-54 (7th Cir. 1997). The Government has failed to state a claim as to the defendant currency. Accordingly, based on the foregoing, the Government's Motion for Default Judgment [DE-12] is DENIED.

### c. Additional concerns

In addition to the issues previously discussed, the court has concerns regarding whether a claim was made for the defendant currency during administrative proceedings. To that end, and to question the Government concerning the use of civil forfeiture in this case, the court will hold a hearing. Because of holidays and the timing of its terms of court, the court has only November 23 or 24 available during the month of November. Otherwise, if the Government is unavailable on both of those dates, the court will have to consider hearing dates in December once the November 30, 2015 term of court has concluded. The Government is DIRECTED to inform the court whether it is available for a hearing on November 23 or 24.

## III. CONCLUSION

For the foregoing reasons, the Government's Motion for Default Judgment [DE-12] is DENIED. The Clerk of Court is DIRECTED to vacate the entry of default as to Mr. Robert Eric Ramirez. The Government is ORDERED to send, within 21 days of the filing date of this order, Notice of these proceedings to Robert Eric Ramirez, in accordance with Supplemental Rule g(4)(b)(ii)-(ii). The Government is ORDERED to, within 35 days, file proof of such service, or an affidavit showing why such service is not necessary or unreasonable. Robert Eric Ramirez shall have 45 days to file a claim from the date the required notice is sent as provided in this order. Additionally, the Government is DIRECTED to inform the court whether it is available for a hearing on November 23 or 24.

SO ORDERED.

This the 27th day of October, 2015.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge